IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.
)
MASSACHUSETTS BAY )
TRANSPORTATION )
AUTHORITY, )
)
Defendant. )

**COMPLAINT**     MAGISTRATE JUDGE _____

Plaintiff, the United States of America, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## INTRODUCTION

1. This is a civil action brought against the Massachusetts Bay Transportation Authority ("MBTA") pursuant to Sections 309(b), 309(d) and 311(b)(7)(C) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b), 1319(d) and 1321(b)(7)(C); and Sections 113(a)(1) and 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(a)(1) and 7413(b).

2. The claims arise from MBTA's failure to comply with (a) the CWA in the operation of twelve of its transportation facilities located in Massachusetts, and (b) a federally-enforceable vehicle idling regulation found at 310 Code of Massachusetts Regulations ("C.M.R.") § 7.11(1)(b).

3. This Court has jurisdiction over the subject matter of this action pursuant to

Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in this district pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); 28 U.S.C. § 1391; and 28 U.S.C. § 1395.

5. Notice of commencement of this action has been given to the Commonwealth of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. §1319(b) and Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

6. MBTA is an independent authority and a political subdivision of the Commonwealth of Massachusetts.

7. MBTA provides public transportation through the operation of buses, subways and commuter railways.

8. MBTA is a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5); Section 302(e) of the CAA, 42 U.S.C. § 7602(e); and 310 C.M.R. § 7.00.

### Count 1: Unauthorized Discharges of Process Water

9. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 8 above.

10. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters of the United States, except in compliance with the terms and conditions of a National Pollution Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

11. MBTA operates a maintenance facility called the "Charlestown Yard," which is

located at 21 Arlington Avenue, Charlestown, Massachusetts.

12. From at least October 1, 1992 through September 15, 1998, MBTA washed the exterior of vehicles outdoors at Charlestown Yard. In addition, during the winter months during this time period, MBTA also rinsed sand/salt trucks outdoors at Charlestown Yard.

13. Wash waters from these practices flowed through drains to the Mystic River. These drains are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

14. MBTA did not have a permit authorizing these discharges.

15. MBTA also operates a maintenance facility known as "Everett Shops," which is located at 80 Broadway, Everett, Massachusetts.

16. Since at least October 1, 1992, MBTA has discharged non-contact cooling water to the Mystic River via a storm drain system at the Everett Shops facility. The storm drain system is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

17. MBTA did not apply for a permit for this discharge until August 25, 1999.

18. The Mystic River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2 and, hence, a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

19. The wash waters MBTA discharged from Charlestown Yard and the non-contact cooling water MBTA discharged from Everett Shops contain "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

20. By discharging wash waters from Charlestown Yard to the Mystic River without a permit, MBTA violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

21. By discharging non-contact cooling water from Everett Shops to the Mystic River without a permit, MBTA violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

22. Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for a civil penalty of up to $25,000 per day for each violation occurring up to January 30, 1997, and $27,500 per day for each violation occurring on January 30, 1997, or thereafter.

## Count 2: Failure to Apply for Storm Water Permits

23. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 22 above.

24. Section 308(a) of the CWA, 33 U.S.C. § 1318(a) authorizes the Administrator of EPA to require the owner or operator of any point source to provide such information as the Administrator may reasonably need to carry out the objectives of the CWA, including, among other things, the development and issuance of NPDES permits under Section 402 of the CWA, 33 U.S.C. § 1342.

25. Under Sections 308 and 402 of the CWA, 33 U.S.C. §§ 1318 and 1342, the Administrator promulgated regulations relating to the control of storm water discharges, at 40 C.F.R. § 122.26.

26. Forty C.F.R. § 122.26(c)(1) provides that dischargers of storm water associated with industrial activity are required to apply for an individual permit, apply for a permit through a group application, or seek coverage under a general permit. The deadline for permit applications was October 1, 1992. See 40 C.F.R. § 122.26(e).

27. Under 40 C.F.R. § 122.26(b)(14)(viii), storm water associated with industrial activity includes storm water from transportation facilities identified as Standard Industrial

Classification (SIC) code 41 facilities, which have vehicle maintenance shops or equipment cleaning operations.

28.     MBTA owns and operates the following SIC code 41 transportation facilities at which it performs vehicle maintenance and equipment cleaning operations within the meaning of 40 C.F.R. § 122.26(b)(14)(viii):

>Cabot Yard
>275 Dorchester Avenue
>South Boston, Massachusetts;
>
>Charlestown Yard
>21 Arlington Avenue
>Charlestown, Massachusetts;
>
>Everett Shops
>80 Broadway
>Everett, Massachusetts;
>
>Fellsway Bus Garage
>447 Salem Street
>Medford, Massachusetts;
>
>Lynn Bus Garage
>985 Western Avenue
>Lynn, Massachusetts;
>
>Mattapan Carhouse
>480 River Street
>Mattapan, Massachusetts;
>
>Reservoir Carhouse
>400 Chestnut Hill Avenue
>Brookline, Massachusetts;
>
>Riverside Carhouse
>325 Grove Street
>Newton, Massachusetts; and
>
>Wellington Carhouse
>37 Revere Beach Parkway
>Medford, Massachusetts.

29. During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from Cabot Yard to the Fort Point Channel. Storm water from Cabot Yard discharges to the Fort Point Channel through a series of catch basins and manholes, a Boston Water and Sewer Commission drain, and, from some areas of the site, through the West Roxbury Brook conduit.

30. The catch basins, manholes, drain and conduit are all "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

31. The Fort Point Channel is part of Boston Harbor, which is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

32. MBTA did not apply for a permit for discharges of storm water from Cabot Yard until August 13, 1999, and did not receive permit coverage until August 15, 1999.

33. During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from Charlestown Yard directly to the Mystic River through a series of catch basins and outfalls, as well as indirectly to the Mystic River via Boston Water and Sewer Commission drains.

34. The catchbasins, outfalls and drains are all "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

35. The Mystic River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

36. MBTA failed to apply for a permit for storm water discharges from Charlestown Yard to the Mystic River until August 13, 1999, and did not receive permit coverage until August

15, 1999.

37.	During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from Everett Shops through a private storm drain and a single outfall to the Mystic River.

38.	The private storm drain and the outfall are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

39.	The Mystic River is a "water of the United States" within the meaning of 42 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

40.	On June 11, 1993, MBTA obtained coverage under a NPDES General Stormwater Permit for discharges of storm water from Everett Shops. That permit expired on September 27, 1997.

41.	MBTA failed to apply for a new permit for storm water discharges from Everett Shops to the Mystic River until August 13, 1999, and did not obtain permit coverage until August 15, 1999.

42.	During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from the Fellsway Bus Garage through a series of catchbasins and two outfalls to the Mystic River.

43.	The catch basins and outfalls are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

44.	MBTA failed to apply for permit coverage for storm water discharges from the Fellsway Bus Garage to the Mystic River until August 13, 1999, and did not obtain coverage until August 15, 1999.

45.  During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from the Lynn Bus Garage through a system of catch basins to the City of Lynn separate storm sewer and, ultimately, to the Saugus River.

46.  The catch basins and storm sewer are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

47.  The Saugus River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

48.  MBTA failed to apply for a permit for storm water discharges from the Lynn Bus Garage to the Saugus River until August 13, 1999, and did not obtain permit coverage until August 15, 1999.

49.  During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 through drains into maintenance pits at the Mattapan Carhouse to a separate storm sewer and to the Neponset River.

50.  The drains and separate storm sewer are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

51.  The Neponset River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

52.  MBTA failed to apply for a permit for the discharge of storm water from the Mattapan Carhouse to the Neponset River from at least October 1, 1992 to September 1, 2000,

when MBTA ceased discharging stormwater associated with industrial activity to the Neponset River.

53. During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity" within the meaning of 40 C.F.R. § 122.26 from Reservoir Carhouse to a Brookline storm drain and, ultimately, to the Muddy River.

54. The storm drain is a "point source" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

55. The Muddy River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

56. MBTA failed to apply for permit coverage for storm water discharges from the Reservoir Carhouse to the Muddy River until August 13, 1999, and did not receive permit coverage until August 15, 1999.

57. During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity," within the meaning of 40 C.F.R. § 122.26, from the Riverside Carhouse via a concrete drain to the Charles River.

58. The concrete drain is a "point source" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

59. The Charles River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

60. MBTA failed to apply for a permit for storm water discharges from the Riverside Carhouse to the Charles River until August 13, 1999, and did not obtain permit coverage until

August 15, 1999.

62. During rain events since at least October 1, 1992, MBTA has discharged "storm water associated with industrial activity," within the meaning of 40 C.F.R. § 122.26, from the Wellington Carhouse through a series of catch basins to storm drains that discharge to the Mystic and Malden Rivers.

62. The storm drains are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

63. The Malden River is a "water of the United States" within the meaning of 40 C.F.R. § 122.2, and, hence, a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

64. MBTA failed to apply for a permit for storm water discharges from the Wellington Carhouse to the Mystic and Malden Rivers until August 13, 1999, and did not obtain permit coverage until August 15, 1999.

65. By failing to apply for a permit at each of the facilities identified in paragraph 28 by October 1, 1992, MBTA violated Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

66. Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for a civil penalty of up to $25,000 per day for each violation occurring up to January 30, 1997, and $27,500 per day for each violation occurring on January 30, 1997, or thereafter.

## Count 3: Unauthorized Discharge of Storm Water

67. The Complainant incorporates by reference the allegations in paragraphs 1 through 66 above as though fully set forth herein.

68. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of

- 10 -

pollutants by any person into the navigable waters of the United States except in compliance with, among other things, a NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

70. During storm events occurring between October 1, 1992 and August 14, 1999, MBTA discharged "storm water associated with industrial activity" into navigable waters from each of the following facilities without a permit: Cabot Yard, Charlestown Yard, Fellsway Bus Garage, Lynn Bus Garage, Reservoir Carhouse, Riverside Carhouse and Wellington Carhouse.

71. MBTA discharged storm water associated with industrial activity into waters of the United States from the Mattapan Carhouse without a permit during storm events occurring from at least October 1, 1992 to September 1, 2000, when MBTA ceased discharging stormwater into the Neponset River.

72. During storm events occurring between September 28, 1997, and August 14, 1999, MBTA discharged storm water associated with industrial activity from Everett Shops into waters of the United States without a permit.

73. MBTA's discharge of storm water associated with industrial activity from Cabot Yard, Charlestown Yard, Everett Shops, Fellsway Bus Garage, Lynn Bus Garage, Reservoir Carhouse, Riverside Carhouse, Wellington Carhouse and Mattapan Carhouse are discharges of pollutants within the meaning of Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

74. By discharging storm water associated with industrial activity from Cabot Yard, Charlestown Yard, Everett Shops, Fellsway Bus Garage, Lynn Bus Garage, Reservoir Carhouse, Mattapan Carhouse, Riverside Carhouse and Wellington Carhouse without a permit, MBTA violated section 301(a) of the CWA, 33 U.S.C. § 1311(a).

75. Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b)

and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for civil penalty of up to $25,000 per day for each violation occurring up to January 30, 1997, and $27,500 per day for each violation occurring on January 30, 1997, or thereafter.

### Count 4: Discharging Storm Water In Violation of its NPDES Permit

76    The United States realleges and incorporates by reference the allegations of paragraphs 1 through 75 above.

77.    On June 11, 1993, MBTA received coverage under NPDES General Stormwater Discharge Permit No. MAR00A711 for storm water discharges from Everett Shops to the Mystic River. The permit expired on September 27, 1997. The permit required that MBTA develop a storm water pollution prevention plan for the facility. MBTA failed to develop a storm water pollution prevention plan as required by the permit.

78.    During storm events that occurred from June 11, 1993 through September 27, 1997, MBTA discharged storm water associated with industrial activity in violation of its permit.

79.    By discharging storm water from Everett Shops without having developed a storm water pollution prevention plan, MBTA violated its permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

80.    Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for a civil penalty of up to $25,000 per day for each violation occurring up to January 30, 1997, and $27,500 per day for each violation occurring on January 30, 1997, or thereafter.

### Count 5: SPCC Plan Violations

81.    The United States incorporates by reference the allegations in paragraphs 1 through 80 as though fully set forth herein.

82. Pursuant to Section 311(j)(1) of the CWA, 33 U.S.C. § 1321(j)(1), EPA has promulgated Oil Pollution Prevention Regulations at 40 C.F.R. Part 112.

83. Pursuant to 40 C.F.R. § 112.3(a), the owner or operator of an onshore facility in operation on or before January 10, 1974 (the effective date of the Oil Pollution Prevention Regulations) that has discharged or, due to its location, could reasonably be expected to discharge, oil in harmful quantities into or upon the navigable waters of the United States shall have prepared a Spill Prevention, Control, and Countermeasure ("SPCC") Plan by no later than July 10, 1974. Pursuant to 40 C.F.R. § 112.3(b), owners or operators of facilities that become operational after that date shall prepare a SPCC Plan within six months after the date the facility begins operations.

84. MBTA is the "owner" and "operator" within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6), and 40 C.F.R.§ 122.2, of the following facilities:

> Albany Street Bus Garage
> 421 Albany Street
> Boston, Massachusetts;
>
> Bartlett Street Garage
> 2565 Washington Street
> Roxbury, Massachusetts
>
> Cabot Yard
> 275 Dorchester Avenue
> South Boston, Massachusetts;
>
> Charlestown Yard
> 21 Arlington Avenue
> Charlestown, Massachusetts;
>
> Everett Shops
> 80 Broadway
> Everett, Massachusetts;
>
> Fellsway Bus Garage
> 447 Salem Street

Medford, Massachusetts;

Quincy Bus Garage
945 Hancock Street
Quincy, Massachusetts

Reservoir Carhouse
400 Chestnut Hill Avenue
Brookline, Massachusetts;

Riverside Carhouse
325 Grove Street
Newton, Massachusetts; and

Wellington Carhouse
37 Revere Beach Parkway
Medford, Massachusetts.

85. Each of the facilities identified in paragraph 84 is an "onshore facility" within the meaning of Section 311(a)(10) of the Clean Water Act, 33 U.S.C. § 1321(a)(10) and 40 C.F.R. § 122.2.

86. At all relevant times, MBTA has stored "oil" within the meaning of 40 C.F.R. § 112.2 at each of the facilities.

87. Due to their respective locations, each facility identified in paragraph 84 could reasonably be expected to discharge oil in harmful quantities into or upon surface waters which are "navigable waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. §§ 110.1 and 112.2.

88. Since at least 1980, the Albany Street Bus Garage has had an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until September 8, 1998.

89. The Bartlett Street Garage has an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to

prepare a SPCC plan until June 11, 1998.

90. Since at least 1993, Cabot Yard has had an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until August 31, 1998.

91. Since at least 1979, Charlestown Yard has had an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until August 31, 1998.

92. Since at least 1982, Everett Shops has had an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until September 8, 1998.

93. Fellsway Bus Garage has an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until September 8, 1998.

94. Quincy Bus Garage has an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until August 31, 1998.

95. Reservoir Carhouse has an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until June 11, 1998.

96. Since at least 1974, the Riverside Carhouse has had an oil storage capacity subjecting it to the requirements of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until June 11, 1998.

97. Wellington Carhouse has an oil storage capacity subjecting it to the requirements

of the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112. MBTA failed to prepare a SPCC plan until August 31, 1998.

98. By failing to prepare SPCC plans for each of the facilities identified in paragraph 87 within the time required by the Oil Pollution Prevention Regulations, MBTA violated 40 C.F.R. §112.3.

99. Pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for civil penalty of up to $25,000 per day for each violation occurring up to January 30, 1997, and $27,500 per day for each violation occurring on January 30, 1997, or thereafter.

## Count 6: Excessive Idling in Violation of the CAA

100. The United States incorporates by reference the allegations in paragraphs 1 through 99 as though fully set forth herein.

101. Sections 113(a)(1) and 113(b) of the CAA, 42 U.S.C. §§ 7413(a)(1) and (b), provide for injunctive relief, and the assessment of civil penalties, for violations of any provision of an applicable state implementation plan or permit. The provisions of the Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) are part of a federally-enforceable state implementation plan approved by EPA under Section 110 of the CAA, 42 U.S.C. § 7410.

102. The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) provides:

> No person shall cause, suffer, allow, or permit the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes. This regulation shall not apply to:
>
> (1) vehicles being serviced, provided that the operation of the engine is essential to the proper repair thereof, or
>
> (2) vehicles engaged in the delivery or acceptance of goods, wares, or merchandise for which engine assisted power is necessary and substitute

alternate means cannot be made available, or

(3) vehicles engaged in an operation for which engine power is necessary for an associated power need other than movement and substitute alternate power means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution.

103. MBTA operates four (4) bus yards at the following locations:

Albany Street Bus Garage
421 Albany Street
Boston, Massachusetts

Bartlett Street Bus Garage
2565 Washington Street
Roxbury, Massachusetts

Fellsway Bus Garage/Yard
447 Salem Street
Medford, Massachusetts

Lynn Bus Garage
985 Western Avenue
Lynn, Massachusetts

104. On February 7, 13, 14, and 21, 2002, EPA inspectors visited the bus yards listed in Paragraph 103. The inspectors observed at least 55 buses idling in excess of the five-minute limit prescribed under 310 C.M.R. § 7.111(b), 31 for over one hour.

105. A bus is defined as a "motor vehicle" under 310 C.M.R. § 7.00.

106. The amount of idling time in excess of five minutes was "foreseeable" because the buses were scheduled to go on their routes at predetermined times.

107. The amount of idling time in excess of five minutes was "unnecessary"; the idling did not fall into any of the enumerated exceptions in 310 C.M.R. § 7.11(1)(b).

108. Therefore, the MBTA violated 310 C.M.R. § 7.11(1)(b), an applicable state implementation plan provision, numerous times on at least the following dates: February 7, 13, 14, and 21, 2002.

109. On July 2, 2002, EPA issued MBTA a Notice of Violation under the authority of Section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 7413(a)(1), concerning MBTA's excess idling of buses.

110. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, MBTA is liable for a civil penalty of up to $27,500 per day for each violation.

## **RELIEF SOUGHT**

Wherefore, Plaintiff, the United States of America, respectfully requests that the Court grant the following relief:

1. Permanently enjoin MBTA from discharging wastewater or storm water from point sources not authorized by a NPDES permit or in violation of the terms of any NPDES permit;

2. Permanently enjoin MBTA from operating its facilities in violation of the CWA's Oil Pollution Prevention Regulations.

3. Permanently enjoin MBTA from idling any buses in violation of 310 C.M.R. § 7.11(1)(b).

4. Assess MBTA a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each day of each violation of the Clean Water Act occurring prior to January 31, 1997, and a civil penalty not to exceed twenty-seven thousand five hundred dollars ($27,500) for each day of each violation of the Clean Water Act occurring on or after January 31, 1997;

5. Assess MBTA a civil penalty not to exceed twenty-seven thousand five hundred dollars ($27,500) for each day of each violation of the Clean Air Act.

6. Award the United States all costs and disbursements of this action; and

7.   Grant such other relief as the Court deems just and proper.

> Respectfully submitted,
>
> *Tom Sansonetti*
>
> THOMAS L. SANSONETTI
> Assistant Attorney General
> Environment and Natural Resources Division
> United States Department of Justice
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: *Michael Sady*
> MICHAEL SADY
> Assistant U.S. Attorney
> United States Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA 02210
> (617) 748-3362

OF COUNSEL:
CATHERINE S. SMITH
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777