

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff )<br><br>v. )<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY, )<br><br>Defendant. ) | CIVIL ACTION<br>NO. |

## CONSENT DECREE

DOCKETED

③

## TABLE OF CONTENTS

I. STATEMENT OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. OBJECTIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VII. CLEAN WATER ACT COMPLIANCE MEASURES . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Compliance with Storm Water Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Compliance with SPCC Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VIII. CLEAN AIR ACT COMPLIANCE MEASURES . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX. ENVIRONMENTAL MANAGEMENT SYSTEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

X. SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . . . . . . . . . . . . . . . . . . . 9

XI. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

XII. FORM OF NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

XIII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Failure to Pay Civil Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    Failure to Comply with CAA and CWA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    Failure to Meet EMS Deadlines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Failure to Submit Semi-Annual Progress Reports for CAA Compliance, EMS
        Implementation, and SEP Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Failure to Comply with SEP Provisions (except semi-annual progress reports) . . . . . . . 19

XIV. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XIV. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Informal Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Formal Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVI. INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . 29

XVII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . . . 30

XVIII. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XIX. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XX. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XXI. SEVERABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XXII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XXIII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XXV. PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XXVI. SERVICE/SIGNATORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>CONSENT DECREE</u>

WHEREAS, the plaintiff, United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), has filed a complaint ("the Complaint") alleging that

the defendant, the Massachusetts Bay Transportation Authority ("MBTA"), has violated effluent

limitations and oil pollution prevention requirements promulgated pursuant to Sections 301 and

311 of the Clean Water Act ("the CWA"), 33 U.S.C. §§ 1311 and 1321; and a vehicle idling

regulation promulgated pursuant to Section 110 of the Clean Air Act (the "CAA"), 42 U.S.C.

§ 7412.

WHEREAS, Defendant, MBTA, an independent authority and political subdivision of the

Commonwealth of Massachusetts, provides public transportation through the operation of buses,

subways and commuter railways; and

WHEREAS, MBTA owns and operates facilities, including those identified in Appendix

A ("the Facilities"), which is attached hereto and incorporated into this Consent Decree by

reference;

WHEREAS, the Complaint alleges that, at certain of the Facilities, in violation of the

CWA and CAA, MBTA discharged process water without a National Pollutant Discharge

Elimination System ("NPDES") permit; discharged storm water without a NPDES permit; failed

to apply for a storm water permit; violated the Storm Water Multi-Sector General Permit for

Industrial Activities; failed to develop and implement oil Spill Prevention Control and

Countermeasure ("SPCC") Plans; and idled its diesel buses in excess of the limit prescribed by

Massachusetts law;

1

WHEREAS, MBTA states that it has taken recent steps to enhance compliance with environmental statutes and regulations, including the reorganization of its Environmental Department, the adoption of an environmental policy, and the agreement to develop and implement an environmental management system;

WHEREAS, the parties agree, and the Court finds, that settlement of this action without adjudication or admission of facts or law is in the public interest and that entry of this Consent Decree without further litigation is an appropriate resolution of the claims alleged in the Complaint; and,

WHEREAS, the parties consent to the entry of this Consent Decree;

NOW, THEREFORE, it is hereby ordered, adjudged, and decreed as follows:

## I. STATEMENT OF CLAIM

1.    The Complaint filed in this action states claims upon which relief can be granted against the MBTA pursuant to Sections 309 and 311 of the CWA, 33 U.S.C. §§ 1319 and 1321; and Section 113 of the CAA, 42 U.S.C. § 7413.

## II. JURISDICTION AND VENUE

2.    The Court has jurisdiction over the subject matter of this action and over the parties to this Consent Decree pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1331, 1345 and 1355.  Venue properly lies in this district pursuant to Section 309(b)

and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); Section 113(b) of the

CAA, 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1391 and 1395.  The United States has notified the

Commonwealth of Massachusetts of the commencement of this action, pursuant to Section

309(a)(1) of the CWA, 33 U.S.C. § 1319(a)(1), and Section 113(a)(1) of the CAA, 42 U.S.C.

§ 7413(a)(1).

## III.  APPLICABILITY

3.      The provisions of this Consent Decree shall apply to and be binding upon the

United States on behalf of the EPA, and upon MBTA and its officers, directors, agents,

employees acting in their official capacities, successors, and assigns.  MBTA shall provide

written notice and a true copy of this Consent Decree to all persons, firms, and corporations

having a management or consulting role in performing work or ensuring compliance under this

Consent Decree.  MBTA also shall provide written notice and a true copy of this Consent Decree

to all successors in interest prior to any transfer of ownership or other interest in all or part of the

Facilities or their operations.  Simultaneously with such notice, MBTA shall notify, in writing,

EPA Region I and the United States Attorney for the District of Massachusetts, at the addresses

specified in Section XII of this Consent Decree, of such succession in interest and that such

notice and copy has been given by MBTA.  In the event of transfer of ownership or other interest

in any or all of the Facilities or their operations, MBTA shall not be released from the

obligations or liability under this Consent Decree unless (a) the new owner has specifically

assumed, and has the financial and technical ability to assume, the obligations and liability for

3

compliance with these provisions, and (b) EPA has approved the assumption of such obligations

and liability. If MBTA transfers a Facility for a non-transportation-related use, MBTA shall be

released from this Consent Decree's compliance obligations and liability for that Facility at such

time that MBTA has (a) ceased operating the Facility for a transportation use; (b) removed any

stored oil and any non-adsorbed oil and grease at the Facility; and (c) satisfied its obligations

under the CAA and CWA for that Facility.

    4.    MBTA hereby agrees not to oppose entry of this Consent Decree by this Court or

to challenge the validity of any provision of this Consent Decree.

## IV.  OBJECTIVES

    5.    It is the express purpose of the parties in entering into this Consent Decree to:

a.    further the goals of the CWA and the CAA, as enunciated in Sections 101 and

    311(b)(1) of the CWA, 33 U.S.C. §§ 1251 and 1321(b)(1); and Section 101(b) of

    the CAA, 42 U.S.C. § 7401(b);

b.    have MBTA take all measures necessary to comply with the CWA and CAA;

c.    complete the Supplemental Environmental Projects; and

d.    improve MBTA's environmental management system.

## V.  DEFINITIONS

    6.    Terms used in this Consent Decree that are defined in the CWA or CAA or in

regulations promulgated pursuant to those Acts shall have the meanings assigned to them in

those Acts or regulations, unless otherwise provided in this Consent Decree. Whenever the
terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Consent Decree" shall mean this document, all attachments and appendices
hereto, and any work plans developed pursuant to this document.

b.    "Day" shall mean calendar day, unless otherwise specified.

c.    "Parties" shall mean the United States and the MBTA, except in Appendix C
(Environmental Management System Requirements), where the term shall also
include the Commonwealth of Massachusetts.

d.    "Provide written notice" shall mean, unless otherwise specified, that information
and documents shall be transmitted in accordance with the procedures specified in
Section XII (Form of Notices).

e.    Where deadlines are expressed by "X months" after an event, the period of
performance shall end in the month that is "X months" following the event on the
numbered day that is the next numbered day after the day of the original event.
For example, a deadline of three months after the entry of the Consent Decree,
where the Consent Decree is entered on September 5, 2003, would be December
6, 2003.

## VI. CIVIL PENALTY

7. a. *Penalty Amount and Allocation*: MBTA shall pay a total civil penalty of $328,274,
together with interest accruing from the date upon which the Consent Decree is lodged with the

5

Court. The interest rate is that specified in 26 U.S.C. § 6621(a)(2) as of the date of lodging. The penalty shall be paid in two installments as follows.

    i.    The first installment of $50,000, together with interest accruing from the date of lodging, shall be paid to the U.S. Treasury within thirty (30) days after the Entry of this Consent Decree.

    ii.    The second installment, totaling $278,274, plus interest accruing from the date of lodging shall be paid as follows: An amount of $91,372, which is allocated to the violations of Section 311 of the CWA, 33 U.S.C. § 1321, shall be paid to the Oil Spill Liability Trust Fund. The remaining amount shall be paid to the U.S. Treasury. MBTA shall make both of the second installment payments by July 12, 2004.

    b. *Payment Transfer Instructions*: MBTA shall make payment by FedWire Electronic Funds Transfer ("EFT") in accordance with current EFT procedures and in accordance with written instructions to be provided by the United States Attorney's Office, Financial Litigation Unit, Boston, Massachusetts, referencing USAO File Number USA02000V00537, EPA Region I, and DOJ Case Number ST96-6932. MBTA shall be responsible for the costs of such electronic funds transfer. The United States Attorney's Office will advise its online accounting office to initiate the appropriate Online Payment and Collection transaction to the United States Coast Guard National Pollution Funds Center for that portion of the civil penalty allocated to violations of Section 311 of the CWA, 33 U.S.C. §1321. MBTA shall send a copy of the electronic funds transfer authorization form, the electronic funds transfer transaction record, and

6

the transmittal letter to the United States as specified in Section XII (Form of Notice), and to the United States Coast Guard, National Pollution Funds Center, 4200 Wilson Blvd., Suite 1000, Arlington, Virginia 22203.

## VII. CLEAN WATER ACT COMPLIANCE MEASURES

8.     Compliance with Storm Water Requirements:

a.  MBTA certifies that, for the facilities identified in Appendix A, Section 1, it is in compliance with its obligations under the NPDES Storm Water Multi-Sector General Permit for Industrial Activities, which appears at 65 Fed. Reg. 64801 (October 30, 2000) ("the Multi-Sector Permit"), and the Storm Water Pollution Prevention Plans ("SWPPPs") developed for each of the facilities.

b.  MBTA shall maintain compliance with the Multi-Sector Permit and the SWPPPs.

c.  MBTA certifies that it has undertaken the following actions:

i.      With regard to Charlestown Yard, 21 Arlington Avenue, Charlestown, Massachusetts, MBTA has brought the facility into compliance with applicable "good housekeeping" provisions of its SWPPP by keeping all exposed areas of the facility in a clean, orderly manner where such exposed areas could contribute pollutants to storm water discharges.

ii.     With regard to Everett Shops, 80 Broadway, Everett, Massachusetts, MBTA has brought the facility into compliance with applicable "good housekeeping" provisions of its SWPPP by keeping all exposed areas of

7

the facility in a clean, orderly manner where such exposed areas could contribute pollutants to storm water discharges.

iii.    With regard to Lynn Bus Garage, 985 Western Avenue, Lynn, Massachusetts, MBTA has brought the facility into compliance with applicable "good housekeeping" provisions of its SWPPP by keeping all exposed areas of the facility in a clean, orderly manner where such exposed areas could contribute pollutants to storm water discharges.

iv.    With regard to Wellington Carhouse, 37 Revere Beach Parkway, Medford, Massachusetts, MBTA has brought the facility into compliance with applicable "good housekeeping" provisions of its SWPPP by keeping all exposed areas of the facility in a clean, orderly manner where such exposed areas could contribute pollutants to storm water discharges.

d.  Starting from the date that this Consent Decree is lodged, MBTA shall submit to EPA the next Comprehensive Site Compliance Evaluation Report completed for each of the facilities listed in Appendix A, Section 1.  MBTA shall submit each such report within fourteen (14) days from the day that it is required to be completed.

9.    Compliance with SPCC Requirements:

a.  MBTA certifies that, with respect to all of the facilities identified in Appendix A, Section 2, it has achieved compliance with MBTA's obligations under the Oil Pollution Prevention Regulations at 40 C.F.R. Part 112 and the SPCC plans developed for each of the facilities.

8

b. MBTA shall maintain compliance with the Oil Pollution Prevention Regulations and the SPCC plans.

c. By August 31, 2004, MBTA shall submit to EPA copies of SPCC plans for all the facilities listed in Appendix A, Section 2, as revised to satisfy the new requirements of 40 C.F.R. Part 112. *See* 67 Fed. Reg. 47140 (July 17, 2002), as amended at 68 Fed. Reg. 1351 (Jan. 9, 2003 and 68 Fed. Reg. 18894 (April 17, 2003).

## VIII. CLEAN AIR ACT COMPLIANCE MEASURES

10.    MBTA shall comply with 310 Code of Massachusetts Regulations (CMR) 7.11(1)(b), as enforced through the Clean Air Act, as specified in Appendix B, documents B1-B4. Appendix B, documents B1-B4 are attached hereto and incorporated into this Consent Decree by reference.

## IX. ENVIRONMENTAL MANAGEMENT SYSTEM

11.    MBTA shall develop, implement, and audit an Environmental Management System in accordance with Appendix C, which is attached hereto and incorporated into this Consent Decree by reference.

## X. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

12.    MBTA shall implement two Supplemental Environmental Projects ("SEPs") in accordance with the provisions of Appendices D and E, which are attached hereto and

incorporated into this Consent Decree by reference. The SEPs include (a) using low sulfur instead of high sulfur diesel fuel in MBTA trains fueled at Boston's South Station and MBTA layover facilities ("the Fuel Switch SEP"); and (b) donating or placing a conservation easement on portions of MBTA's Charlestown Bus Yard and Somerville Train Yard, so that an existing multi-use path may be extended along the Mystic River from the Draw 7 Park, in Somerville, Massachusetts, to the Route 99 bridge in Boston, Massachusetts ("the Mystic River Path Extension SEP"). The Fuel Switch SEP is projected to eliminate approximately 32 tons of particulate matter and 429 tons of sulfur dioxide from the air around Boston over the life of the SEP. The Mystic River Path Extension SEP will facilitate the future extension of the Mystic River path so that commuters can bicycle along the Mystic River to Boston's Sullivan Square subway stop and, eventually, to downtown Boston. In implementing the Fuel Switch SEP, MBTA shall spend not less than $1,057,523, as more particularly described in Appendix C.

13.     MBTA is responsible for the satisfactory completion of the SEPs in accordance with the requirements of this Consent Decree. "Satisfactory completion" means that MBTA shall complete the work in a timely manner and in accordance with all the requirements of Appendices C and D. For purposes of the Fuel Switch SEP, "satisfactory completion" also means spending not less than $1,057,523, as more particularly described in Appendix C.

14.     With regard to the SEPs, MBTA certifies the truth and accuracy of each of the following:

10

a.    That all cost information provided to the EPA in connection with EPA's approval of the Fuel Switch SEP is complete and accurate and represents a fair estimate of the costs necessary to implement the SEP;

b.    That, as of the date of this Consent Decree, MBTA is not required to perform or develop either SEP by any federal, state, or local law or regulation, nor is MBTA required to perform or develop either SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.    That the SEPs are not projects that MBTA was planning or intending to perform other than in settlement of the claims resolved in this Consent Decree;

d.    That MBTA has not received, and is not negotiating to receive, credit for the SEPs in any other enforcement action or transaction, including sale of emission credits; and

e.    That MBTA will not receive any reimbursement for any portion of the SEPs from any other person.

15.    The provisions of Appendices D and E require MBTA to submit completion reports once the SEPs are complete. EPA may, in its sole discretion, require information in addition to that required in Appendices D and E in order to determine the adequacy of SEP completion or eligibility of SEP costs.

16.    After receiving the SEP Completion Report for each SEP, EPA will, in writing, either (a) indicate that the SEP has been completed satisfactorily; (b) determine that the SEP has not been completed satisfactorily and seek stipulated penalties in accordance with Paragraph

11

32(b)(1); or (c) notify MBTA of any deficiencies in the SEP Completion Report or the SEP and specify a reasonable schedule for curing such deficiencies. If EPA notifies MBTA pursuant to clause (c) above that the SEP Completion Report is deficient, but EPA has not yet made a final determination about the adequacy of SEP completion itself, MBTA shall, within thirty (30) days of receipt of such notice, cure any deficiencies in the SEP Completion Report. If EPA notifies MBTA pursuant to clause (c) above of deficiencies in the performance of a SEP, MBTA shall cure the deficiencies in accordance with the schedule specified by EPA, unless within ten (10) days of its receipt of the EPA notification, MBTA submits a written notice of dispute to EPA pursuant to Section XIV (Dispute Resolution). A determination by EPA that the SEP has not been completed satisfactorily under clause (b) above shall be final unless within ten (10) days of its receipt of the EPA notice, MBTA submits a written notice of dispute to EPA pursuant to Section XIV (Dispute Resolution). For purposes of this Paragraph, the SEP shall be considered "satisfactorily" completed if performed in accordance with the applicable Appendix and the applicable provisions of the Consent Decree.

17.    After it submits a SEP Completion Report for any given SEP, MBTA may use the Dispute Resolution procedures outlined in Section XIV, as specified above in paragraph 16, to resolve disputes over the amount of eligible SEP costs or whether a SEP has been satisfactorily completed. However, Dispute Resolution is not available for disputes over interim SEP submissions, unless both parties agree otherwise.

12

18.    Each submission required under Appendices D and E shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 23 below.

19.    MBTA shall maintain legible copies of all records and documentation regarding the development, implementation, and performance of the SEPs. MBTA shall provide such records and documentation to the United States within fourteen (14) days of a request for such information.

20.    Any public statement, oral or written, in print, film, or other media, by MBTA making reference to the SEPs under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action brought by the U.S. Environmental Protection Agency and the U.S. Department of Justice for alleged violations of the Federal Clean Water Act and Clean Air Act."

## XI. REPORTING REQUIREMENTS

21.    Paragraph 10 above and Appendices B, C, D, and E require the MBTA to submit semi-annual status reports on or before May 1 and November 1 of each year to describe how MBTA is progressing with (a) CAA compliance; (b) EMS development and implementation; (c) performance of the Fuel Switch SEP; and (d) performance of the Mystic River Path Extension SEP. Those reports may be combined so that the MBTA submits one report instead of four on each due date.

13

22.    All reports and submissions under this Consent Decree shall be sent to the persons designated in Section XII of this Consent Decree (Form of Notice).

23.    In all documents or reports submitted to the United States pursuant to this Consent Decree, the MBTA shall sign and certify that the information contained in such document or report is true, accurate, and not misleading by stating the following:

> I certify that the information contained in or accompanying this submission is, to the best of my knowledge and belief, after thorough inquiry, true, accurate, and complete. As to any marked and identified portions of the submission for which I cannot personally verify truth and accuracy, I certify, as the authority official having supervisory responsibility for the person(s) who verify those portions, that the information contained therein is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

As to documents or portions of documents prepared by any of MBTA's contractors or consultants:

> I certify that I have read and understand this document and all attachments, or identified portions thereof. The information submitted is, to the best of my knowledge and belief, after thorough inquiry, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

24.    The reporting requirements of this Consent Decree do not relieve MBTA of any reporting obligations required by any federal, state, or local law, regulation, permit, or other requirement.

25.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

14

## XII. FORM OF NOTICE

26.    a. Submissions required by this Consent Decree to be made to the United States

shall be made in writing to the following respective addressees, unless written notice is provided

that another individual has been designated to receive the submissions:

As to the Department of Justice

       Chief, Environmental Enforcement Section
       Environment & Natural Resources Division
       United States Department of Justice
       P.O. Box 7611 - Ben Franklin Station
       Washington, D.C.  20044-7611
       Attn: Henry Friedman
       Telephone: (202) 514-5268
       Fax: (202) 616-2427

As to the United States Attorney

       Assistant United States Attorney
       United States Attorney's Office
       One Courthouse Way Suite 9200
       Boston, Massachusetts  02210
       Attn: Michael Sady
       Telephone: (617) 748-3362
       Fax: (617) 748-3971

As to the EPA

       Chief, Legal Regulatory Unit
       Office of Environmental Stewardship
       U.S. Environmental Protection Agency, Region I
       One Congress Street, Mail Code SES
       Boston, Massachusetts 02114-2023
       Attn: Catherine Smith
       Telephone: (617) 918-1777
       Fax: (617) 918-1809

And, for EMS submissions only:

Jean Holbrook
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region I
One Congress Street, Mail Code SPP
Boston, Massachusetts 02114-2023
Telephone: (617) 918-1816
Fax: (617) 918-1809

And, for CWA submissions only:

Karen McGuire
Chief, Water Technical Unit
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1
One Congress Street, Mail Code SEW
Boston, Massachusetts 02114-2023
Telephone: (617) 918-1711
Fax: (617) 918-1810

b.  Notice to MBTA under this Consent Decree shall be made in writing to the following

addressees, unless written notice is provided that another individual has been designated to

receive notice:

Geraldine R. Scoll, Esq.
Assistant General Manager for Environmental Affairs
MBTA
Ten Park Plaza, Room 6720
Boston, MA 02116

Janis O. Kearney, Esq.
Counsel for Environmental Affairs
MBTA
Ten Park Plaza, Room 6720
Boston, MA 02116

16

c. Notices submitted pursuant to this Section shall be deemed submitted upon receipt, unless otherwise provided in this Consent Decree or by mutual agreement of the parties in writing.

## XIII.  STIPULATED PENALTIES

27.    MBTA shall be liable for stipulated penalties, as set forth below.  A violation of this Consent Decree, subject to Stipulated Penalties, includes failing to perform any obligation required by the terms of this Consent Decree (including any work plan or schedule approved under this Consent Decree), according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

28.    Failure to Pay Civil Penalty: For failure to (a) submit the Civil Penalty pursuant to the terms of Section VI or (b) submit the penalty in accordance with Section A.8(b)(3) of Appendix D (cash payment option), MBTA shall pay stipulated penalties in the following amounts for each day during which the payment is not received:

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

29.    Failure to Comply with CAA and CWA

a.    *Failure to Meet CAA Compliance Deadlines*: For failure to complete any of the work or submit any of the documents required under Section VIII and Appendix B-1 (CAA Compliance Measures), except semi-annual progress reports, MBTA shall pay stipulated penalties in the following amounts for each day during which the work is not completed or the document not submitted.

17

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $500 |
| 31st through 60th day | $1,000 |
| 61st day and beyond | $2,000 |

b. *Failure to comply with CAA idling limits*: Until December 1, 2006, for failure to comply with Appendix B-1, paragraph 4, MBTA shall pay $500 per bus per day.

c. *Failure to comply with CWA document submission requirements*: For failure to submit any of the documents required by paragraphs 8(d) and 9(c), MBTA shall pay stipulated penalties in the following amounts for each day during which the work is not completed or the document not submitted.

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $500 |
| 31st through 60th day | $1,000 |
| 61st day and beyond | $2,000 |

d. *Failure to maintain compliance with CWA storm water and SPCC requirements*: For failure to comply with paragraphs 8(b) and 9(b), MBTA shall pay a stipulated penalty of one thousand five hundred dollars ($1,500) for each day of non-compliance.

30.     Failure to Meet EMS Deadlines: For failure to complete any of the work or submit any of the documents required under Appendix B (EMS Requirements), except semi-annual progress reports, MBTA shall pay $1,000 for each day during which the work is not completed or the document is not submitted. Where both the Commonwealth and the United States are owed stipulated penalties for the same EMS violations, MBTA shall pay 50 percent to the United States and 50 percent to the Commonwealth.

18

31.    <u>Failure to Submit Semi-Annual Progress Reports for CAA Compliance, EMS</u>

<u>Implementation, and SEP Performance</u>: For failure to submit the semi-annual progress reports

required under Paragraph 10 and Appendices B, C, D, and E, MBTA shall pay stipulated

penalties in the following amounts for each day during which the report(s) is not submitted.

| Period of Failure to Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 30th day | $250 |
| 31st through 60th day | $500 |
| 61st day and beyond | $1,000 |

32.    <u>Failure to Comply with SEP Provisions (except semi-annual progress reports)</u>:

MBTA shall be liable for stipulated penalties according to the provisions set forth below in the

event that MBTA (a) fails to meet SEP deadlines; (b) fails to satisfactorily complete the SEPs;

(c) fails to spend all required SEP amounts; or (d) completes or initiates the SEPs late:

a.    *Failure to Meet SEP Milestone Deadlines*: If MBTA fails to meet the SEP

deadlines outlined in Appendices D and E, MBTA shall pay a stipulated penalty

for each day after performance was due until performance is completed.  This

paragraph shall not apply to deadlines for semi-annual progress reports (see

paragraph 31 above).  The stipulated penalty amounts per day are as follows:

$500 for the 1st through 30th day, $1,000 for the 31st through 60th day, and $2,000

for the 61st day and beyond.

b.    *Failure to Satisfactorily Complete SEPs or Spend All SEP Amounts*:

i.    *Fuel Switch SEP*: Assuming no permissible SEP implementation delays

pursuant to Paragraph A.8(b)(2) of Appendix D, if MBTA's total

19

expenditure for the Fuel Switch SEP is less than $1,057,523, MBTA shall

pay a stipulated penalty equal to one dollar for each one dollar of

difference between the actual cost of the SEP and $1,057,523, plus interest

accruing from the date of lodging of this Consent Decree at the rate

provided for in 28 U.S.C. §1961. If there are allowable SEP

implementation delays pursuant to Paragraph A.8(b)(2) of Appendix D,

the MBTA shall pay a stipulated penalty equal to one dollar for each

dollar of difference between the actual cost of the SEP and the new SEP

value (which new SEP value shall be determined pursuant to Paragraph

A.8(b)(2) of Appendix D). This subparagraph shall not apply until after

MBTA has the opportunity to spend SEP "leftover amounts" in

accordance with Paragraph 6 of Appendix D. Should (a) MBTA perform

the "Alternative SEP" instead of the Fuel Switch SEP, in accordance

Appendix D, Paragraph 8; and (b) MBTA's total expenditure for the

"Alternative SEP" is less than $1,258,550, MBTA shall pay a stipulated

penalty equal to one dollar for each dollar of difference between the actual

cost of the SEP and $1,258,550, plus interest accruing from the date of the

lodging of this Consent Decree at the rate provided for in 28 U.S.C.

§ 1961.

ii.     *Mystic River Path Extension*: If MBTA fails to satisfactorily complete the

Mystic River Path Extension SEP in accordance with Appendix E, MBTA

20