shall pay a stipulated penalty of $94,164. Should (a) MBTA perform the Alternative SEP in accordance with the provisions of Appendix E, Section C instead of performing or paying a stipulated penalty for the Mystic River Path Extension; and (b) MBTA's total expenditure for the Alternative SEP is less than $264,000, MBTA shall pay a stipulated penalty equal to one dollar for each dollar of difference between the actual cost of the SEP and $264,000, plus interest accruing from the date of the lodging of this Consent Decree at the rate provided for in 28 U.S.C. § 1961.

    c.    *Late Completion or Initiation of SEPs*: MBTA shall pay a stipulated penalty of $500 for each day that it is late in completing the Mystic River Path Extension SEP. Likewise, MBTA shall pay a stipulated penalty of $500 for each day that it is late in beginning the Fuel Switch SEP, unless the provisions of Appendix D, paragraph 8 regarding delay in the effective date of the fuel rule apply, or for each day on which it fails to implement the Fuel Switch SEP, once begun. In addition, if MBTA is more than one year late in completing the Mystic River Path Extension SEP or starting the Fuel Switch SEP, the payment provisions contained in paragraph 32(b) for SEPs that are not completed shall apply.

33.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of the Consent Decree.

34. MBTA shall pay stipulated penalties within thirty (30) days of receiving the United States' written demand, following the procedures in paragraph 35. The United States may reduce or waive Stipulated Penalties otherwise due under this Consent Decree. Except as provided in paragraph 17 (regarding Dispute Resolution for SEP completion issues), the decision to reduce or waive a stipulated penalty otherwise due under this Consent Decree shall be in the sole, unreviewable discretion of the United States.

35. Stipulated penalty payments of less than fifty thousand dollars ($50,000) shall be made to the United States by certified check, payable to "Treasurer of the United States of America," and shall be tendered to the United States Attorney for the District of Massachusetts, together with a transmittal letter describing the basis for the penalties and referencing USAO File Number USA02000V00537 and DOJ Case Number ST96-6932. A copy of the transmittal letter shall be sent to the United States at the addressees specified in Section XII. Payments of fifty thousand dollars or more shall be made by FedWire Electronic Funds Transfer ("EFT") referencing USAO File Number USAO2000V00537, EPA Region I, and DOJ Case Number ST96-6932. The EFT shall be made in accordance with current EFT procedures and in accordance with written instructions to be provided by the United States Attorney's Office, Financial Litigation Unit, Boston, Massachusetts. The costs of such electronic funds transfer shall be the responsibility of MBTA. MBTA shall send a copy of the electronic funds transfer

22

authorization form, the electronic funds transfer transaction record, and the transmittal letter to the United States as specified in Section XII (Form of Notice).

36.     If MBTA fails to pay stipulated penalties according to the terms of this Consent Decree, the United States shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961.

37.     MBTA may invoke Dispute Resolution to contest whether or not a stipulated penalty is due, except Dispute Resolution is not available for disputes over whether stipulated penalties are due for failure to pay the civil penalty required in paragraph 7. Nor is Dispute Resolution available for disputes over interim SEP submissions, unless the parties agree otherwise, as provided in paragraph 17 above. MBTA shall notify EPA within ten (10) days after a Consent Decree deadline or notice by EPA, whichever is earlier, of its position and shall request Dispute Resolution. Thereafter, the provisions of Section XIV (Dispute Resolution), shall apply. Stipulated penalties shall continue to accrue during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate established pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

    a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, MBTA shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of EPA's decision or order;

    b.    If the dispute is appealed to the Court, and the United States prevails in whole or in part, MBTA shall pay all accrued penalties determined by the Court to be

owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph c, below;

c. If any Party appeals the District Court's decision, MBTA shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

38. In accordance with Section XVII (Effect of Settlement/Reservations of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for MBTA's violation of this Consent Decree or applicable laws. Where a violation of this Consent Decree is also a violation of an environmental statute or regulation, MBTA shall be allowed a credit, for any Stipulated Penalties paid, against any statutory penalties imposed for such violation.

## XIV. FORCE MAJEURE

39. Stipulated penalties shall not be due for the number of days (or, for violations of Appendix B-1, paragraph 4, the number of minutes) of noncompliance caused by a Force Majeure event as defined in this paragraph, provided that MBTA complies with the terms of this Section of the Consent Decree. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes entirely beyond the control of MBTA, its consultants, contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Consent Decree notwithstanding the best efforts of MBTA, its consultants, contractors, and subcontractors, to avoid the delay. "Best efforts" include using best efforts to

anticipate any potential force majeure event and to address the effects of any such event (a) as it is occurring; and (b) after it has occurred, such that the delay is minimized to the greatest extent possible. Force majeure does not include MBTA's financial inability to perform any obligation under this Consent Decree.

40. If any event occurs which may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, MBTA shall notify EPA within forty-eight (48) hours after MBTA first knew or should have known by the exercise of due diligence that the event might cause a delay. Within five (5) working days thereafter, MBTA shall provide to EPA, at the addresses specified in Section XII (Form of Notice), a written explanation of the cause(s) of any actual or expected delay or noncompliance, the anticipated duration of any delay, the measure(s) taken and to be taken by MBTA to prevent or minimize the delay, a proposed schedule for the implementation of such measures, and a statement as to whether, in the opinion of MBTA, such event may cause or contribute to an endangerment to public health, welfare, or the environment.

41. If the United States agrees that a delay or anticipated delay is attributable to Force Majeure, the parties shall stipulate in writing to an extension of time for the performance of the affected requirements of this Consent Decree, not to exceed the amount of time lost due to the actual unavoidable delay resulting from such circumstances. Stipulated penalties shall not be due for the number of days of noncompliance caused by such circumstances.

42. If the United States does not agree that a Force Majeure event has occurred or does not agree to the extension of time sought by MBTA, the United States' position shall be

25

binding, unless MBTA invokes Dispute Resolution under Section XIV of this Consent Decree. In any such dispute, MBTA bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event; that MBTA provided the written notice required by Paragraph 40, that the force majeure event caused any delay MBTA claims was attributable to that event; and that MBTA exercised best efforts to prevent or minimize any delay caused by the event.

## XIV.  DISPUTE RESOLUTION

43.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, such procedures shall not apply to actions by the United States to enforce obligations of MBTA that have not been disputed in accordance with this Section.

44.     <u>Informal Dispute Resolution</u>: Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when MBTA sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) days from the date the dispute arises, unless that period is modified by written agreement.  If the parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless,

within twenty (20) days after the conclusion of the informal negotiation period, MBTA invokes formal dispute resolution procedures as set forth below.

45. <u>Formal Dispute Resolution</u>: MBTA shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not be limited to, any factual data, analysis, or opinion supporting MBTA's position and any supporting documentation relied upon by MBTA.

46. The United States shall serve its Statement of Position within forty-five (45) days of receipt of MBTA's Statement of Position. The United States' Statement of Position shall include, but may not be limited to, any factual data, analysis, or opinion supporting that position and all supporting documents relied upon by the United States. The United States' Statement of Position shall be binding on MBTA, unless MBTA files a motion for judicial review of the dispute in accordance with the following Paragraph.

47. MBTA may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XII of this Consent Decree (Form of Notice), a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of MBTA's position on the matter in dispute, including any supporting factual data, analysis, opinion or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

48. The United States shall respond to MBTA's motion within the time period provided in the Local Rules of this Court, unless the parties stipulate otherwise. MBTA may file a reply memorandum, to the extent permitted by the Local Rules or the parties' stipulation, as applicable.

49. In any dispute under this Paragraph, MBTA shall bear the burden of demonstrating that its position complies with, and furthers the objectives of, this Consent Decree, the CWA, and the CAA, and that MBTA is entitled to relief under applicable law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

50. The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect any obligation of MBTA under this Consent Decree, not directly in dispute. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 37, above. If MBTA does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIII of this Consent Decree (Stipulated Penalties).

51. Nothing shall prevent the parties from using alternative dispute resolution procedures, such as mediation, to resolve disputes arising under this Section.

## XVI. <u>INFORMATION COLLECTION AND RETENTION</u>

52. EPA and its contractors, consultants, and attorneys shall have authority to enter MBTA's facilities, at all reasonable times, upon proper identification, for the purposes of monitoring the progress of activity required by this Consent Decree, verifying any data or information submitted to EPA under this Consent Decree, assessing MBTA's compliance with this Consent Decree, taking samples, and taking splits of samples collected by MBTA or its consultants. This requirement is in addition to, and not in limitation of, inspection authorities pursuant to state or federal law.

53. Until five years after the termination of this Consent Decree, MBTA shall retain, and shall instruct its contractors and agents to preserve, all copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, and that relate in any manner to MBTA's performance of its obligations under this Consent Decree. At any time during this record-retention period, the United States may request copies of any documents or records required to be maintained under this Paragraph.

54. At the conclusion of the document-retention period provided in the preceding Paragraph, MBTA shall notify the United States at least ninety (90) days prior to the destruction of any records or documents subject to the requirements of the preceding Paragraph, and, upon request by the United States, MBTA shall deliver any such records or documents to EPA. MBTA may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If MBTA asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information;

29

(b) the date of the document, record, or information; (c) the name and title of the author; (d) the name and title of each addressee and recipient; (e) a description of the subject matter; (f) the privilege asserted by MBTA. However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

55. This Consent Decree in no way limits or affects any right of entry or inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, except that MBTA may require EPA inspectors to follow appropriate safety procedures during inspections.

## XVII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56. This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging. This Consent Decree does not limit any rights or remedies available to the United States for any criminal violations.

57. This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under federal or state laws, regulations, or permit conditions, except as expressly specified herein.

58. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations and in no way relieves MBTA of its responsibility to comply with all applicable federal, state, and local permits, laws, and regulations. The United

States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that MBTA's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA and CAA.

59. This Consent Decree does not limit or affect the rights of MBTA or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against MBTA, except as otherwise provided by law.

60. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

61. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health, welfare, or the environment arising at, or posed by, MBTA's facilities, whether related to the violations addressed in this Consent Decree or otherwise.

## XVIII. COSTS

62. Each party shall bear its own costs of this action (including attorneys' fees) and specifically waives any right to recover such costs from the other party pursuant to the Equal Access to Justice Act, 5 U.S.C. 504, or other applicable law. However, the United States shall be entitled to collect the costs (including attorneys's fees) incurred in any action necessary to

collect any outstanding penalties due under this Consent Decree and in enforcing the requirements of this Consent Decree.

## XIX. EFFECTIVE DATE

63. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court. However, if the Commonwealth of Massachusetts enters its Consent Decree resolving Suffolk Superior Court case 2001-04492-E before this Consent Decree is entered, the effective date of Appendix C (Environmental Management System Requirements) shall mean the date upon which the Commonwealth's Consent Decree is entered.

## XX. RETENTION OF JURISDICTION

64. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purposes of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XXI. SEVERABILITY

65. The provisions of this Consent Decree shall be severable, and should any provisions be declared by a court of competent jurisdiction to be unenforceable, the remaining provisions shall remain in full force and effect.

## XXII. MODIFICATION

66. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court. The terms and schedules contained in Appendices B, C, D, and E of this Consent Decree may be modified upon written agreement of MBTA and EPA (together with the Commonwealth for EMS requirements) without Court approval, except as expressly stated therein, unless such modification effects a material change to the terms of the Consent Decree or materially affects MBTA's ability to meet the objectives of this Consent Decree.

## XXIII. TERMINATION

67. MBTA may serve upon the United States a Request for Termination after MBTA has (a) maintained continuous satisfactory compliance with the requirements of the CWA and CAA, its CWA permits, and this Consent Decree for a period of five years after the Effective Date; (b) complied with all other requirements of this Consent Decree, including those related to the SEPs and EMS; and (c) has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree. The Request for Termination shall state that the MBTA has satisfied the above requirements, together with all necessary supporting documentation.

68. Following receipt by the United States of MBTA's Request for Termination, the parties shall confer informally concerning the Request and any disagreement that the parties may have as to whether MBTA has satisfactorily complied with the requirements for termination of

this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

69.  If the United States does not agree that the Consent Decree may be terminated, MBTA may invoke Dispute Resolution under Section XIV of this Consent Decree. However, MBTA shall not seek Dispute Resolution for any dispute pursuant to Section XIV, until sixty (60) days after service of its Request for Termination.

## XXIV. FINAL JUDGMENT

70.  Entry of this Consent Decree constitutes Final Judgment under Rule 54 of the Federal Rules of Civil Procedure.

## XXV. PUBLIC COMMENT

71.  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if, upon consideration of the comments regarding the Consent Decree, the United States concludes that the Consent Decree is inappropriate, improper, or inadequate. MBTA consents to entry of this Consent Decree without further notice.

72.  If, for any reason, this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party, and the terms of the agreement may not be used as evidence in any litigation between the parties.

## XXVI. SERVICE/SIGNATORIES

73. The undersigned representatives of MBTA and the United States each certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party whom he or she represents.

74. MBTA agrees that the following agent is authorized to accept service of process by mail on behalf of MBTA with respect to all matters arising under this Consent Decree:

Janis O. Kearney, Esq.
Counsel for Environmental Affairs
Massachusetts Bay Transportation Authority
Ten Park Plaza, Room 6720
Boston, MA 02116

75. MBTA agrees to accept service by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. MBTA shall notify the United States Department of Justice and the EPA as specified in Section XII of any change in the identity or address of MBTA, its agent for service, or its counsel.

76. This Consent Decree may be signed in counterparts, and each counterpart signature page shall be given full force and effect.

Judgment is hereby entered in accordance with the foregoing Consent Decree this  8  day of  June  2004.

_____
UNITED STATES DISTRICT JUDGE

35

United States v. Massachusetts Bay Transportation Authority
United States District Court, District of Massachusetts
Consent Decree

The following parties hereby consent to the entry of this Consent Decree:

For Plaintiff, UNITED STATES OF AMERICA

_____          _3.3.04_____
THOMAS L. SANSONETTI                          Dated
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

_____          _3/4/04_____
HENRY FRIEDMAN                                Dated
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611

37

United States v. Massachusetts Bay Transportation Authority
United States District Court, District of Massachusetts
Consent Decree

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

By:

_____       _____3/9/04_____
MICHAEL SADY                                          Dated
Assistant United States Attorney
District of Massachusetts
One Courthouse Way Suite 9200
Boston, Massachusetts 02210
(617) 748-3362

37

United States v. Massachusetts Bay Transportation Authority
United States District Court
District of Massachusetts
Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

_____      3/4/04
PHYLLIS P. HARRIS                       Dated
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2201A
Washington, D.C. 20460

United States v. Massachusetts Bay Transportation Authority  
United States District Court  
District of Massachusetts  
Consent Decree

_____      _2-18-04_  
ROBERT W. VARNEY                        Dated  
Regional Administrator  
United States Environmental Protection Agency  
  Region I – New England  
1 Congress Street, Suite 1100  
Boston, Massachusetts 02114-2023

_____      _February 17, 2004_  
CATHERINE S. SMITH                      Dated  
Senior Enforcement Counsel  
United States Environmental Protection Agency  
  Region I – New England  
Office of Environmental Stewardship  
1 Congress Street  
Boston, Massachusetts 02114-2023

United States v. Massachusetts Bay Transportation Authority
United States District Court
District of Massachusetts
Consent Decree

FOR DEFENDANT, MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

_____     2/12/04
WILLIAM A. MITCHELL JR.              Dated
General Counsel
Massachusetts Bay Transportation Authority
Ten Park Plaza, Room 7760
Boston, MA 02116