UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MASSACHUSETTS BAY )<br>TRANSPORTATION AUTHORITY, )<br>)<br>Defendant. )<br>) | Civil Action No. 04-10481-MEL |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO ENTER CONSENT DECREE

The United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), respectfully submits this memorandum in support of its (Assented To) Motion to Enter Consent Decree ("Motion") that was lodged with the Court on March 10, 2004.

BACKGROUND

On March 10, 2004, the United States commenced this action against defendant Massachusetts Bay Transportation Authority ("MBTA"), alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., and the Clean Air Act ("CAA"), 42 U.S.C. § 7401, et seq., at twelve of its transportation and maintenance facilities, located in various locations in greater Boston metropolitan area. In particular, the complaint alleges violations of Sections 301(a), 308(a), and 311(j) of the CWA, 33 U.S.C. §§ 1311(a), 1318(a), and 1321(j); and Section 110 of CAA, 42 U.S.C. § 7410, as implemented through a Massachusetts state regulation found at 310 C.M.R. 7.11(1)(b).

The first CWA count alleges that MBTA discharged wash water and cooling water into

the Mystic River, without a permit, from its Charlestown Yard and Everett Shops, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). The second and third CWA counts allege that MBTA failed to apply for storm water permits and allowed unpermitted storm water discharges from nine MBTA facilities into the Mystic River, Fort Point Channel, Saugus River, Neponset River, Muddy River, and Charles River, in violation of Sections 308(a) and 301(a) of the CWA, 33 U.S.C. §§ 1318(a) and 1311(a). The fourth count alleges that, at the one facility for which MBTA did obtain a storm water permit, MBTA failed to develop a storm water pollution prevention plan, in violation of its permit. The fifth count of the complaint alleges a violation of 40 C.F.R. § 112.3(a) and Section 311(j) of the CWA, 33 U.S.C. § 1321(j), for failure to prepare adequately and implement oil Spill Prevention Control and Countermeasure ("SPCC") plans for at least ten facilities.

The final count of the Complaint alleges a violation of Section 110 of the CAA, 42 U.S.C. § 7410, for MBTA's failure to adhere to a Massachusetts regulation that prohibits excessive idling of vehicles. This regulation, 310 C.M.R. 7.11(1)(b), is incorporated into Massachusetts' CAA State Implementation Plan and is, thus, enforceable by the Federal government pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b).

On the same day the complaint was filed, the United States lodged with the Court a proposed Consent Decree, executed by the parties, which resolves the allegations of the complaint. Under the proposed Decree, MBTA will pay a civil penalty to the United States of $328,274. In addition, MBTA agrees to perform two Supplemental Environmental Projects ("SEPS").

As one of the SEPs (for which MBTA shall spend at least $1,057,523), MBTA will use

less polluting diesel fuel in the locomotives that it fuels at Boston's South Station and MBTA lay-over facilities ("Fuel Switch SEP").  It is estimated that this SEP will reduce approximately 32 tons of particulate matter and 429 tons of sulfur dioxide from air around Boston over the three-year life of the SEP.  The Fuel Switch SEP is expected to reduce diesel emissions along the corridors of the affected train lines and their surrounding communities.

As a second SEP, MBTA has agreed to place a conservation easement on or donate a one-acre strip of land on MBTA's Charlestown Bus Yard and Somerville Train Yard ("the Mystic River Path Extension SEP").  This SEP will facilitate the future extension of an existing multi-use path along the Mystic River so that commuters can bicycle along the Mystic River to Boston's Sullivan Square subway station.  In addition, this SEP will supply a critical link in Boston growing network of  bike trails.  Among the anticipated effects of affording safe bicycle commuting capability to residents of the greater Boston area is the possibility that people will choose to commute by bicycle rather than car, thereby reducing the air and water pollution associated with commuting by car.  Additionally, the design of the Mystic River Path Extension (which is not part of the settlement itself) is expected to incorporate several elements that will reduce oil pollution carried to the river through stormwater runoff.

Should either SEP not be feasible to implement for reasons described in the Decree, MBTA may perform an alternative SEP.  The alternative SEP would bring locomotives into early compliance with EPA's "Tier 0" locomotive emissions standards, thereby reducing nitrous oxide emissions that contribute to the formation of ozone and smog.

In addition to the SEPs, the Consent Decree requires MBTA to comply with a variety of injunctive measures to achieve and maintain full compliance with the CWA and the CAA.  First,

MBTA certifies compliance with the CWA and commits to maintaining compliance with the CWA.  Second, the Decree limits MBTA's idling of transit buses and imposes a schedule for MBTA to achieve full compliance with the CAA requirements cited in the complaint. Also, the Decree requires MBTA to address institutional barriers to compliance with environmental laws by making extensive environmental management system ("EMS") improvements.  These EMS improvements include, among other things, clarifying who at MBTA has responsibility for complying with environmental laws; ensuring accountability for compliance with those laws; creating an audit program so that MBTA can monitor its own compliance; improving training programs; improving MBTA's record maintenance system; establishing a pollution prevention program; integrating environmental planning into organizational decision making; and establishing a community outreach program to promote the ability of employees and the public to communicate directly to the MBTA on environmental matters.

    Pursuant to the policy at 28 C.F.R. 50.7, the Department of Justice published notice of the Consent Decree in the <u>Federal</u> <u>Register</u> on March 25, 2004, 69 Fed. Reg. 15381, and afforded the public a 30-day period in which to comment on the Decree.  No comments have been received. The United States now moves for entry of the Decree.

ARGUMENT

THE PROPOSED CONSENT DECREE IS FAIR,
REASONABLE, AND CONSISTENT WITH THE GOALS OF
THE CLEAN AIR ACT, AND THE CLEAN WATER ACT

In determining whether to enter a proposed Consent Decree, the function of the reviewing court is to satisfy itself that the Consent Decree is fair, reasonable, and faithful to the objectives of the governing statute.  United States v. Charter International Oil Company, 83 F.3d 510, 514 (1st Cir. 1996);  Durett v. Housing Authority, 896 F.2d 600, 604 (1st Cir. 1990); FTC v. Standard Financial Management Corp., 830 F.2d 404, 408 (1st Cir. 1987).  While the court should not "mechanistically rubberstamp" the parties' proposal, where the settlement has been negotiated by one or more government agencies, the court should not review the merits of the decree de novo.  United States v. Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990).  In reviewing the validity of the proposed decree, "the district court must refrain from second-guessing the Executive Branch." Id.

The proposed Consent Decree in this case is fair, reasonable, and consistent with the goals of the CWA and the CAA. The monetary penalty imposed by the Decree serves to deter the defendant and other potential violators from violating the CWA and the CAA in the future. In negotiating the amount of penalty, the United States has considered the defendant's willingness to perform the Supplemental Environmental Projects referenced herein.

The injunctive provisions of the Decree also are consistent with the goals of the CWA and the CAA.  Consistent with the intent of those statutes, the MBTA is required to achieve and maintain compliance with all of the CWA and CAA provisions cited in the complaint. Additionally, the requirement to make extensive environmental management system

5

improvements will help ensure long-term compliance with those statutes.

The two SEPs also are consistent with goals of the CWA and the CAA. The Fuel Switch SEP supports the goals of the CAA by improving the quality of the air around Boston, particularly in Environmental Justice areas. The Mystic River Path Extension SEP is consistent with the goals of the CAA and the CWA because it is the first step in extending a bike path that should (a) reduce air pollution associated with car commuting, and (b) reduce water pollution by incorporating a design that will reduce storm water runoff.

Pursuant to paragraph 71 of the Consent Decree, MBTA has consented to the entry of the Decree without further notice.

## CONCLUSION

For the foregoing reasons, the Court should enter the Consent Decree executed by the parties in this case.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

Dated: May 26, 2004        By:   /s/   Michael Sady
                Michael Sady
                Assistant U.S. Attorney
                John Joseph Moakley U.S. Courthouse
                Suite 9200, 1 Courthouse Way
                Boston, MA 02210
                (617) 748-3282

OF COUNSEL
Catherine S. Smith
Office of Environmental Stewardship
U.S. EPA, Region 1
1 Congress St., Suite 1100
Boston, MA 02114

## CERTIFICATE OF SERVICE

  I certify that on May 26, 2004, I caused a copy of the foregoing Motion to be served by first class mail, postage pre-paid on counsel of record Karen Schlomy, Rubin & Rudman, 50 Rowes Wharf, Boston, 02110.

                /s/ Michael Sady
                Michael Sady
                Assistant U.S. Attorney